# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA HERNANDEZ,<br><br>       Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>       Defendant. | Case No.  1:15-cv-01684-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL<br>SECURITY APPEAL<br><br>(ECF Nos. 19, 24) |

## I.

## INTRODUCTION

Plaintiff Alicia Hernandez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from stage 1 infiltrating lobular carcinoma of the right breast, status post bilateral mastectomy and chemotherapy; and hypothyroidism.  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 7, 9.)

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for supplemental security income, dated December 22, 2011, alleging disability beginning on February 28, 2011. (AR 159-168.) Plaintiff's application was initially denied on June 5, 2012, and denied upon reconsideration on January 11, 2013. (AR 53-62, 75-86, 95-98, 106-110.) Plaintiff requested and received a hearing before Administrative Law Judge Sharon L. Madsen ("the ALJ"). Plaintiff appeared for a hearing on February 4, 2014. (AR 26-51.) On July 25, 2014, the ALJ found that Plaintiff was not disabled. (AR 13-21.) The Appeals Council denied Plaintiff's request for review on September 11, 2015. (AR 1-5.)

### A.      Hearing Testimony

Plaintiff testified at the February 4, 2014 hearing and was represented by counsel. (AR 26-51.) She was 5'4" and approximately 190 pounds at the time of the hearing. (AR 30.) She was living in an apartment with her husband and one child. (AR 30.) She has a second child who was not living at home. (AR 30.) She graduated high school. (AR 31.)

She has a driver's license, but does not drive often. (AR 31.) She does not need any help showering or getting dressed, but it takes her longer to shower, pick out clothes, and iron. (AR 31-32.) She needs help doing her hair. (AR 43.) She does dishes, but if there are a lot, her arms get tired and she has to take a break for approximately 20 minutes. (AR 32.) She does very light cooking and microwaving. (AR 32.) Her daughter is the one who goes to the store and gets stuff. (AR 32.) She does not do any social activities. (AR 32.)

She has a hard time sleeping at night, so she has a hard time getting up early in the morning. (AR 33.) She wakes up around 9:00 a.m. and prepares her breakfast, does light cleaning, such as wiping the table, and then she takes a break. (AR 33.) She then prepares something to eat and she has her daughter or husband help her do laundry. (AR 33.) She does not watch TV, listen to music, or go on the computer. She does take naps. (AR 33.)

For the most part, Plaintiff had part-time jobs. (AR 33.) She worked for Palm Village, a convalescent home, in the laundry department including washing people's clothes and ironing

for 8 hours a day and 5 days a week.  (AR 34, 44-45.)  She worked for Swan Court Hotel doing housekeeping and laundry 6 days a week for approximately 4 to 6 hours a day.  (AR 34.)  She also worked briefly at Albertsons.  (AR 34.)

Plaintiff stated that she did not feel the same physically or mentally after her mastectomy, surgery, and everything that she has gone through.  (AR 35.)  She feels a lot of weakness in her upper body, back, and both arms.  (AR 35-36.)  She also has a limitation of joint motion in her right shoulder.  (AR 42.)  She cannot reach all the way up for things, such as to get a plate off of a top shelf.  (AR 43.)  She cannot open jars and when she does things repeatedly with her hands, she has to stop and take breaks after approximately 20 minutes.  (AR 43-44.)

At the time of her hearing, she was taking Tamoxifen and iron and thyroid medications.  (AR 36.)  She feels depressed.  (AR 35.)  She still has hot flashes.  (AR 36.)  She feels that she has fatigue issues as a result of a combination of everything her body is going through and her body does not feel the same anymore.  (AR 36.)  She testified that she was not feeling any different at the time of her hearing from how she felt when her incisions healed after surgery.  (AR 37.)  She testified that "[her] energy is very low, and just, like, all the weakness in [her] sides and everything is - - it's what [she has] to deal with every day."  (AR 37.)  Her lack of energy and tiredness causes her to have to lie down during the day approximately two times a day for about 10 to 20 minutes.  (AR 42.)  She thinks that her back pain was tied up with her cancer treatment and fatigue.  (AR 40.)

Plaintiff testified that she was sent to physical therapy at the lymphedema program.  (AR 37.)  Plaintiff then responded "yes" to the ALJ's question, "[a]nd did you do that?"  (AR 37.)  She was given exercises to continue doing and she indicated that she was going to ask her doctor at her appointment in two months if she could refer her to go back again.  (AR 37.)  She has problems with swelling in her arms.  (AR 37-38.)  She was given compression sleeves and gloves.  (AR 38.)  She thinks that she can do activities for about 20 minutes before she would need a break, which she feels has not changed over time.  (AR 38.)  When she takes a break, she "just sit[s] down for a little bit."  (AR 42.)

She did chemotherapy for approximately 4 or 5 months after her surgery and it made her

1  very weak, nauseous, restless, and "very, very, tired." (AR 38.) She testified that she can lift 10

2  pounds for 2 to 3 minutes because her arms get tired. (AR 39.) She can sit for about 30 minutes

3  before she needs to stand up. (AR 39.) She can stand for about 30 minutes, but then she starts to

4  get back pain. (AR 39.) She testified that she could walk "[m]aybe two blocks," although she

5  was not sure. (AR 39.)

6       She was prescribed medication for depression and anxiety by her regular doctor. (AR

7  40.) However, she was no longer taking anything at the time of her hearing. (AR 40.) She did

8  not like the way they made her feel and she indicated that she was not very good with taking

9  medication. (AR 40.) She has not received any referrals to counseling. (AR 40.) She testified

10 that her depression caused her to not want to be around people and she liked to be by herself.

11 (AR 40-41.) She can pay attention to a TV program for a few minutes, but then she loses

12 interest. (AR 41.)  She testified that her daughter and husband managed the finances and paid

13 the bills. (AR 41.)

14       Vocational Expert ("VE") Jose Chaparro also testified at the hearing. (AR 44-50.) The

15 VE's testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (AR 50.)

16 The hypotheticals that the ALJ asked the VE were for a hypothetical individual of the same age

17 and with the same education and work background as Plaintiff. (AR 48.)

18       The first hypothetical that the ALJ asked the VE was for an individual who could lift and

19 carry 50 pounds occasionally and 25 pounds frequently and sit, stand, and walk 6 to 8 hours.

20 (AR 48.) The VE testified that the individual could do the world of unskilled medium, light, and

21 sedentary work. (AR 48.)

22       The second hypothetical that the ALJ asked the VE was for an individual who could only

23 lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk 6 to 8 hours;

24 and do occasional overhead reaching with the right upper extremity. (AR 48.) The VE testified

25 that the individual could not do the world of light work, but could do fast-food worker, DOT

26 code 311.472-010, light, unskilled, and SVP 2, which has 2,263,000 jobs nationally and 217,000

27 in California. (AR 48-49.) The individual could also do cashier II, DOT code 211.462-010,

28 light, unskilled, and SVP 2, which has 1,684,000 jobs nationally and 173,000 in California. (AR

1    49.)  The third example the individual could do is subassembler, DOT code 729.684-054, light,

2    unskilled, and SVP 2, which has 10,000 jobs nationally and 1,300 in California.  (AR 49.)

3          The third hypothetical that the ALJ asked the VE was for the individual from the second

4    hypothetical, but this person needs 2 to 4 additional breaks of 30 minutes per day.  (AR 49.)  The

5    VE testified that this individual could not do any work.  (AR 49.)

6          Plaintiff's counsel then asked the VE a hypothetical for an individual who is limited to

7    the full range of sedentary exertional level also with limitations to occasional extremity reaching

8    overhead and in all directions and to occasional bilateral fine and gross manipulation.  (AR 50.)

9    The VE testified that this individual could not do any work.  (AR 50.)

10         **B.    ALJ Findings**

11         The ALJ made the following findings of fact and conclusions of law:

12   •    Plaintiff has not engaged in substantial gainful activity since December 15, 2011,
13        the application date;

14   •    Plaintiff has the following severe impairments: stage 1 infiltrating lobular
15        carcinoma of the right breast, status post bilateral mastectomy and chemotherapy;
16        and hypothyroidism;

17   •    Plaintiff does not have an impairment or combination of impairments that meets
18        or medically equals the severity of one of the listed impairments;

19   •    Plaintiff has the residual functional capacity ("RFC") to lift and/or carry 20
20        pounds occasionally and 10 pounds frequently; sit, stand, and/or walk for 6 to 8
21        hours each in an 8-hour workday; and occasionally reach overhead with her right
22        upper extremity;

23   •    Plaintiff has no past relevant work;

24   •    Plaintiff was born on March 5, 1970 and was 41 years old, which is defined as a
25        younger individual age 18-49, on the date the application was filed;

26   •    Plaintiff has at least a high school education and is able to communicate in
27        English;

28   •    Transferability of job skills is not an issue because Plaintiff does not have past

relevant work;

- • Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; and

- • Plaintiff has not been under a disability, as defined in the Social Security Act, since December 15, 2011, the date the application was filed.

(AR 13-21.)

### III.

### LEGAL STANDARD

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "  Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

### IV.

### DISCUSSION AND ANALYSIS

Plaintiff raises only one challenge to the ALJ's non-disability finding.  Plaintiff argues that the ALJ erred in discrediting Plaintiff's subjective pain testimony because the ALJ did not

provide clear and convincing reasons supported by substantial evidence for discrediting Plaintiff.[2]  Defendant counters that benefits cannot be awarded solely based on a plaintiff's subjective complaints.  Defendant notes that the ALJ did not reject all of Plaintiff's claims and she assessed a light RFC.  Defendant argues that the ALJ properly found Plaintiff's testimony not fully credible based on inconsistent statements, conduct during the hearing, and daily activities.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment."  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted).  Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms.  Smolen, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of his symptoms by offering "clear and convincing reasons" for the adverse credibility finding.  Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.

---

[2] Plaintiff, citing to Bjornson v. Astrue, 671 F.3d 640, 644-46 (7th Cir. 2012), argues that the ALJ improperly used boilerplate language to reject Plaintiff's credibility.  In Bjornson, the Seventh Circuit noted that the "boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."  Bjornson, 671 F.3d at 644-46.  However, here, the ALJ did not merely provide boilerplate language.  The ALJ informed this Court in a meaningful, reviewable way of the specific evidence that she used to make her credibility determination.  (AR 16, 20.)

1  2004) (internal punctuation and citations omitted).  Factors that may be considered in assessing a

2  claimant's subjective pain and symptom testimony include the claimant's daily activities; the

3  location, duration, intensity and frequency of the pain or symptoms; factors that cause or

4  aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other

5  measures or treatment used for relief; functional restrictions; and other relevant factors.  See

6  Lingenfelter, 504 F.3d at 1040; Thomas v. Barnhart, 238 F.3d 947, 958 (9th Cir. 2002).  In

7  assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of

8  credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements

9  concerning the symptoms, and other testimony by the claimant that appears less than candid;

10 [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a

11 prescribed course of treatment. . . ."  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)

12 (quoting Smolen, 80 F.3d at 1284).

13 **A.    The ALJ Properly Discredited Plaintiff Based on Inconsistencies in Her
14        Testimony**

15     Plaintiff argues that the ALJ improperly considered inconsistencies between Plaintiff's

16 April 2012 Function Report and her hearing testimony because the ALJ ignores the fact that

17 Plaintiff indicated that her condition worsened since May 2012.[3]  Defendant counters that the

18 ALJ properly considered the inconsistencies in Plaintiff's testimony.

19     First, the ALJ found that Plaintiff's "statement that her daughter or her husband handled

20 the money was not fully consistent with her statements in her function report that she could pay

21 bills and use a bank account."  (AR 20.)  Plaintiff indicated in her 2012 Function Report that she

22 was able to pay her bills, handle a savings account, use a checkbook/money orders, and count

23 change.  (AR 208.)  She also indicated that her ability to handle money has not changed since her

24 illnesses, injuries, or conditions began.  (AR 209.)  She testified at the hearing that her daughter

25 and husband managed the finances in her family as far as paying bills, but she did not testify that

26

27 [3] While Plaintiff argues that the ALJ improperly faulted Plaintiff for not completing physical therapy, the ALJ did
   not reject Plaintiff's testimony because of Plaintiff's failure to follow prescribed treatment.  The ALJ discredited
28 Plaintiff based upon Plaintiff's inconsistent statement regarding her physical therapy.

1   she could not pay the bills or manage her finances.  (AR 41.)

2        Second, the ALJ found that Plaintiff's "testimony that she attended the prescribed therapy

3   was not fully accurate because the records showed the claimant stopped therapy early (Exhibit

4   11F, p.8)."  (AR 20.)  The record indicates that Plaintiff stopped physical therapy before

5   completing it because of transportation issues.  (AR 536.)  However, the ALJ did not ask

6   Plaintiff specifically whether she completed the lymphedema program.  The ALJ asked Plaintiff

7   whether she was sent to physical therapy like the lymphedema program.  (AR 37.)  Plaintiff

8   responded "[y]es."  (AR 37.)  Plaintiff then responded "[y]es" to the ALJ's question, "[a]nd did

9   you do that?"  (AR 37.)  The ALJ then asked whether they gave Plaintiff exercises to continue

10  with.  (AR 37.)  Plaintiff responded, "[y]es.  I went and I was in the - - I have my appointment

11  with the doctor, like, in two months, and I was going to go back and ask if she can refer me to go

12  back again."  (AR 37.)

13       While these two cited inconsistencies do not appear to actually be inconsistencies, the

14  ALJ also cited two other inconsistencies in Plaintiff's testimony which the Court finds are clear

15  and convincing reasons to discredit Plaintiff's testimony.

16       Third, the ALJ found that "[Plaintiff] stated in [her April 2012 Function Report] she

17  could walk for up to an hour before taking a break, but then testified that she could only walk for

18  two blocks."  (AR 20.)  In her April 2012 Function Report, Plaintiff indicated that she could

19  walk for an hour before needing to rest for approximately 20 to 30 minutes before she could

20  resume walking.  (AR 210.)  However, she testified at the hearing that she could walk "[m]aybe

21  two blocks," although she was not sure.  (AR 39.)  While Plaintiff argues that she has gotten

22  worse since the time of her April 2012 Function Report, the record does not reflect that her

23  conditions have gotten worse as far as her ability to walk.  Plaintiff points the Court to agency

24  reviewing physician Dr. J. Linder's January 2013 case analysis, Plaintiff's July 2012 Disability

25  Report, and a June 6, 2013 medical oncology follow-up note to show that she indicated that her

26  condition worsened since she completed the April 2012 Function Report.  (AR 76, 218, 608-09.)

27       Dr. Linder recited in his January 2013 case analysis the information from Plaintiff's July

28  2012 Disability Report.  (AR 76.)  In her July 2012 Disability Report, Plaintiff stated that her

condition had worsened, because she noticed that when she carried her grandson for 15 to 20 minutes, she started to get back pain, and she also had been getting headaches. (AR 218.)  She stated that the only new illnesses, injuries, or conditions she had since her last Disability Report were headaches and back pain. (AR 218.)  She stated that these changes occurred on May 14, 2012. (AR 218.)  However, she did not have any new physical or mental limitations. (AR 218.) She indicated that it was taking her longer to shower and to get dressed, but that there were no changes in her daily activities since her April 2012 Disability Report. (AR 221.)  The Court notes that Plaintiff testified at the hearing that she thought that her back pain was tied up with her cancer treatment and fatigue. (AR 40.)

Plaintiff's next Disability Report was completed in February 2013 and she indicated that there had not been a change in her illnesses, injuries, or conditions, she did not have any new physical or mental limitations, and she did not have any new illnesses, injuries, or conditions since she completed her July 2012 Disability Report. (AR 226.)  She indicated that her ability to care for her personal needs was not affected and there had not been any changes in her daily activities since her July 2012 Disability Report. (AR 228.)

On June 6, 2013, it was noted during a medical oncology follow-up that Plaintiff was having worsening issues with hot flashes, fatigue, and emotional instability. (AR 608-09.)  It was noted that "she has noticed that she has had increasing issues with anxiety and feeling sad. She denie[d] any suicidal ideation but she has also noticed that she has had fatigue, which has worsened." (AR 608.)  Plaintiff was given a prescription for Effexor. (AR 609.)

During the June 27, 2013 visit, Plaintiff stated that she stopped taking Effexor after a week because it made her feel very sedated, and she stated that overall, she was feeling better. (AR 605.)  She was having periodic days with anxiety, but she felt that she was handling her stressors more effectively. (AR 605.)  She was given a prescription for Ativan to take as needed for her periodic anxiety. (AR 605.)  She did not complain of fatigue during her June 27, 2013, July 11, 2013, or October 31, 2013 visits. (AR 600-07.)

While Plaintiff points to a complaint of fatigue she made in June 2013 and her statement in July 2012 that she had back pain, and specifically that she had back pain when she carried her

grandson for 15 to 20 minutes, these are not sufficient in light of the entire record to show that her ability to walk had worsened since her April 2012 Function Report, and especially to the extent that she could now only walk 2 blocks.  Therefore, the Court finds that Plaintiff's inconsistent testimony regarding her ability to walk is a clear and convincing reason supported by substantial evidence for discrediting Plaintiff.

Fourth, the ALJ found that "in [Plaintiff's April 2012 Function Report], she stated she had no problem paying attention and that she could follow instructions (Exhibit 5E).  However, at [the] hearing, [Plaintiff] alleged she could only concentrate for a few minutes and then lost interest." [4]  (AR 16.)  When the ALJ asked her if she could concentrate and pay attention to a TV program, Plaintiff testified that she could "maybe for a few minutes, but then [she] won't - - [she] would lose, like, interest."  (AR 41.)  However, in her April 2012 Function Report she stated that her illness, injuries, or conditions did not affect her concentration and that she had no problem paying attention.  (AR 210.)  Therefore, the Court finds that Plaintiff's inconsistent testimony regarding her ability to concentrate is a clear and convincing reason supported by substantial evidence for discrediting Plaintiff.

**B.     The ALJ Properly Discredited Plaintiff's Testimony Based on Plaintiff's Conduct and Demeanor at the Hearing**

Plaintiff argues that the ALJ improperly discredited Plaintiff's testimony based on Plaintiff's conduct at the hearing because Plaintiff's statement about her sitting limitation was consistent with her conduct at the hearing.  Defendant counters that the ALJ properly considered Plaintiff's ability to sit at the hearing.

While the Ninth Circuit has "disapproved of so-called 'sit and squirm' jurisprudence," an ALJ may properly consider inconsistencies in a claimant's testimony and conduct at the hearing when assessing credibility.  Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (finding that the ALJ's comments on the fact that the plaintiff exhibited symptoms that were inconsistent with

---

[4] Although the parties do not discuss this inconsistent statement in their briefs, the ALJ set forth this reason for discrediting Plaintiff during her discussion at step two of the sequential analysis.  (AR 16.)  The Court considers this reason in its review of whether the ALJ set forth reasons which are "sufficiently specific to permit a court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  Thomas, 278 F.3d at 959 (citing Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)).

the medical evidence and plaintiff's other behavior at the hearing were proper) (quoting Morgan Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (holding that an ALJ may properly consider his or her observations) and citing Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985) (finding that an ALJ cannot deny benefits based on observations at the hearing when plaintiff's statements to the contrary are supported by objective evidence)).

Here, the ALJ considered two inconsistencies between Plaintiff's testimony and her conduct and demeanor at the hearing.  First, the ALJ discredited Plaintiff's testimony because "[h]er testimony that she could only sit for 30 minutes was not consistent with her presentation at the hearing, where she sat in apparent comfort throughout her 30+ minute long hearing without standing or taking a break."  (AR 20.)  However, according to the transcript of the hearing, the hearing began at 8:32 a.m. and concluded at 9:02 a.m.  (AR 28, 51.)  Therefore, the hearing lasted exactly 30 minutes.  Plaintiff testified that she could sit for "maybe half an hour" before she has to stand up.  (AR 39.)  While Plaintiff's testimony does not appear inconsistent with her conduct and demeanor at the hearing regarding her ability to sit, the ALJ cited another inconsistency between Plaintiff's testimony and her conduct and demeanor at the hearing.

Second, the ALJ discredited Plaintiff because "at [the] hearing, [Plaintiff] alleged she could only concentrate for a few minutes and then lost interest.  [The ALJ] noted at hearing that [Plaintiff] paid attention and responded appropriately throughout her 30-minute long hearing." (AR 16.)[5]  There is no indication from the hearing transcript that Plaintiff had difficulty paying attention during the hearing.  (AR 28-51.)  As stated above, when the ALJ asked her if she could concentrate and pay attention to a TV program, Plaintiff testified that she could "maybe for a few minutes, but then [she] won't - - [she] would lose, like, interest."  (AR 41.)  Therefore, the Court finds that because Plaintiff's testimony regarding her ability to concentrate was not consistent with the ALJ's observations at the hearing, this is a clear and convincing reason supported by

---

[5] While the parties did not discuss this reason in their briefs, the ALJ set forth this reason for discrediting Plaintiff during her discussion at step two of the sequential analysis.  (AR 16.)  The Court considers this reason in its review of whether the ALJ set forth reasons which are "sufficiently specific to permit a court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  Thomas, 278 F.3d at 959 (citing Bunnell, 947 F.2d at 345-46).

1  substantial evidence to discredit Plaintiff.[6]

2      Accordingly, the ALJ did not err, because she provided clear and convincing reasons

3  supported by substantial evidence for discrediting Plaintiff.[7]

4                                    **V.**

5                                  **ORDER**

6      Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the

7  Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be

8  entered in favor of Defendant Commissioner of Social Security and against Plaintiff Alicia

9  Hernandez.  The Clerk of the Court is directed to CLOSE this action.

10

11  IT IS SO ORDERED.

12  Dated:  __February 16, 2017__

                              UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25  ------------------------------
[6] Any error by the ALJ in citing improper reasons for discrediting Plaintiff is harmless where, as here, the other
26  reasons the ALJ offers are proper.  See Carmickle, 533 F.3d at 1162 (citing Batson v. Comm'r of Soc. Sec., 359
    F.3d 1190, 1197 (9th Cir. 2004)).

27  [7] While Defendant also argues that the ALJ discredited Plaintiff based upon Plaintiff's activities of daily living, here,
    the ALJ merely summarized Plaintiff's activities of daily living, and did not necessarily discredit Plaintiff because of
28  her activities of daily living.  (AR 16, 19.)